STATE OF MAINE
CUMBERLAND, SS.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2009 JUN 25 A 8: 03

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-07-226

JOHN HOUGHTON,
        Plaintiff

      v.

KENNETH E. KOENKE
and JUDITH R. KOENKE,
        Defendants

DECISION AND JUDGMENT

## I. NATURE OF THE CASE

Plaintiff is a self-employed carpenter who brought this action as a mechanics lien to enforce payment for labor and materials for renovation of a building owned by the defendants at 37 Bow Street in Freeport. The defendants denied the essential allegations and filed a counterclaim alleging breach of contract (Count I), violation of the Home Construction Act (Count II), and violation of the Uniform Trade Practices Act (Count III). The plaintiff subsequently amended the complaint to make his claims for a mechanics lien more specific and by adding a second count for breach of contract, including a claim for violation of the prompt payment statute, 10 M.R.S. § 201-A.

## II. FINDINGS AND DISCUSSION[1]

In July 2006 the defendants purchased property with a building thereon at 37 Bow Street in Freeport. The building had been most recently used as a bed and breakfast. The Koenke's intended to move to Maine and open a dental practice on the first floor and renovate the second floor into a single apartment, private residence for them.

---

[1] To the extent that the court sets out facts herein, they represent the findings of the court by a preponderance of the evidence unless stated otherwise.

Both parties allege a breach of contract by the other; however, they never executed a written contract which the Koenkes say is required by the Maine Home Construction Contract Act (HCCA), 10 M.R.S. § 1486, *et seq.*

The defendant's moved to dismiss the action because of the lack of a written contract. The plaintiff argues that because the defendants intended to use the first floor as their professional office, the HCCA does not apply.

In *Runnells v. Quinn*, 2006 ME 7, 890 A.2d 713, the Law Court determined that the HCCA applies even if the owner is not occupying the whole premises as a residence. Quinn owned a multi-family apartment building that included her living unit and two rental units. Her building falls squarely within the definition of "residence" as "a dwelling with 3 or fewer living units." 10 M.R.S. § 1486(5). The Court stated "[t]he limitation in the HCCA to three or fewer living units would appear to contemplate that at least some of those living units might be rental units," *Runnells*, 2006 ME 7, ¶ 18, 890 A.2d at 718; however, they are all residential.

The statutory definition of "residence" specifically excludes HCCA protection for buildings used for "commercial or business purposes." 10 M.R.S. § 1486(5). The court concludes that the HCCA is not applicable here because the use of the first floor as dental offices is substantially dissimilar than the use of the second floor residence. Further, the HCCA definition of "residence" requires that all units be "living units;", even if some of the units are for rental.

Although the parties did not have a written contract, it is clear that the defendants hired Houghton to make renovations and he agreed to assist them through the permitting process and to reconstruct and make renovations for their office and residence.

The lack of a detailed written contract or a firm understanding as to the specifics of what would be done, how it would be done, and when it would be finished make the determination of facts more complicated and difficult. It is clear that the project did not progress as rapidly as initially expected and that the lack of an agreed-to fixed budget has led to the parties present disagreements.

The parties began to talk about specifics in the summer of 2006 and the Town finally issued a permit for interior renovations on October 25, 2006. The final permit for external renovations was not approved until February 2007. There was no fixed date or even a firm estimate as to when plaintiff was expected to finish the work. In fact, any initial delays were beyond the control of either party while the Town officials reviewed the plans.

The job required plaintiff to prepare drawings for the defendants' review, secure a building permit and Town Planning Board approval of the conversion, perform and supervise others in the work of demolition and construction, hire subcontractors, and purchase supplies and materials. The defendants agreed to pay plaintiff $40 per hour for his labor and to reimburse him for expenses plus 10% mark-up on expenses that are customary in his trade.

After the plaintiff started work, he submitted bi-weekly invoices to the defendants for labor, materials, expenses and the 10% mark-up. They were regularly paid without question or protest.

As the work progressed, there was fairly regular contact between the parties, especially by e-mail, including photographs to show the progress of the work; but still, there was no agreement or mention of a completion date or cost agreement for the project. The application to the Town, however, noted a total cost of $175,000 and

3

Houghton provided the defendants a preliminary "construction estimate" of $166,142. This estimate does not constitute a fixed price between the parties.

The defendants continued to live in Virginia throughout the fall of 2006 and winter of 2007, but periodically visited and inspected the premises.

The project was plagued by the lack of a comprehensive master plan. Changes were made on the fly without concrete agreement or cost estimates. An exchange of e-mails even before the permit was approved is evidence of that:

> John,
>
> . . . .
>
> About the floor plans for the house, Judi and I have discussed the various alterations that have been drawn by us and by you. We decided to make a few changes to your most recent plans. If these changes considerably increase the costs of the project you can let us know . . . .

Pl. ex. 1, page 59, e-mail from defendant to plaintiff, October 19, 2006.

> Judi and Ken,
>
> If what you want to do is cut costs, the big thing to do is to do less.
>
> Judi what you ask about all can be done (not by the first of Nov.) but you have not changed the plans to any degree. Are you really going to be happy in this apartment? . . . .
>
> . . . .
>
> I Don't like being a wet blanket, *but if cost is a issue then I have to hold the brake.* What I have done up to now is try to listen to your dreams and do what I could to say what might be done. Now we are having a touch of reality about what it might cost [sic]. (emphasis added)

Pl. ex. 1, page 57, e-mail from plaintiff to defendant, October 20, 2006.

Houghton's amended complaint does not set out a specific count entitled "quantum meruit," but the Law Court in *Runnells* approved recovery on this theory even without the HCCA contract. Plaintiff's amended complaint for a mechanics lien and breach of contract seeks the same measure of damages as quantum meruit.

Notwithstanding the lack of a specific written HCCA or other contract, the plaintiff is entitled to recover for the value of his labor, materials, and expenses.

From October through mid-March, the defendants paid Houghton's invoices as submitted, then payments stopped after the plaintiff submitted an invoice on March 26, 2009, for $8,847.29. Shortly afterwards, in early April, Kenneth Koenke and his realtor, Pat Anderson, spoke with plaintiff and unexpectedly told plaintiff that he had two weeks to get the apartment ready to be occupied, to complete as much as he could do and then to pack up his tools and stop work. Up to that point, Houghton had not been given any deadline, although it is reasonable to expect that the defendants would expect him to make continuing progress towards completion. The Koenke's frustration, however, did not manifest itself until the April meeting.

After he was instructed to continue working for two more weeks, Houghton expended substantial labor and incurred additional cost. Because of the defendants' instructions to keep working, Houghton reasonably expected that he would be paid, but two more invoices on April 9 ($16,813.02) and May 23 ($20,024.33) went unpaid.

The defendants did, however, pay a total of $22,422.97 directly to plumbing, electric, and heating subcontractors and materials suppliers, leaving an unpaid balance of $23,261.67. Of this, $9,320 represents plaintiff's labor. The remaining $13,941.67 represents other out-of-pocket expenses and markup.

To the extent that the defendants disagree with the amount that is owed, the court finds that the plaintiff billed for labor, material, expenses, and the markup as became a protocol and practice and as actually incurred. On the other hand, the defendants' differences are based on a comparison with the construction estimate, which was provided in good faith by the plaintiff, however it does not accurately reflect the actual accrual of labor and expenses.

The plaintiff has met his burden of proof as to Count I, mechanics lien, and is entitled to enforce the same for the judgment amount plus costs and interest.

The mechanics lien statute generally benefits a contractor for labor and materials, 10 M.R.S. § 3251, but is also enforceable for profits and markup as part of payments to the contractor that were part of the compensation for enhancing the value of property and are part of the debt to be secured by the lien. *Combustion Engineering, Inc. v. Miller Hydro Group*, 577 A.2d 1186, 1188 (Me. 1990).

In Count II of the amended complaint, the plaintiff seeks his remedy under the Construction Contract statutes, 10 M.R.S. § 1111, *et seq.* that provide for prompt payment of sums due within twenty days after delivery of the invoice. 10 M.R.S. § 1113(3) He is entitled to interest on sums wrongfully withheld. 10 M.R.S. § 1113(4) Because the plaintiff had to initiate litigation to enforce payment, the owner is also liable for a penalty of 1% per month for all sums wrongfully withheld, "in addition to all other damages due and as a penalty." 10 M.R.S. § 1118(2).

A "construction contract" is any oral or written agreement "to perform or to supply materials for work on any real property." 10 M.R.S. § 1111(2). Its terms are similar to the mechanic lien statute, and for the same reason, it ought to apply to sums due as profit or markup as well, that reflect the full amount due.

### III. CONCLUSION

The court finds that the parties entered into an oral contract for labor and materials to renovate the defendants' building. Payment for services and materials is enforceable under the statutes.

Although the exact terms of payment were not agreed to at the beginning, they became established by the acts of the parties, at least until the end of March 2007; that is, plaintiff would submit an invoice and it would be seasonably paid.

As for damages, the plaintiff is entitled to an award for the amount of unpaid invoices for labor and materials actually incurred:

| | |
|---|---|
| Invoice for March 26, 2007 | $ 8,847.29 |
| Invoice for April 9, 2007 | 16,813.02 |
| Invoice for May 23, 2007 | 20,024.33 |
| Total of unpaid invoices | $45,684.64 |

The defendants paid $22,422.97 directly to suppliers and are entitled to a credit of that amount. The total balance due is $23,361.67.

In addition to this amount, the plaintiff is entitled to interest on any unpaid balance due beginning on the 21st day after delivery of the invoice[2] at a rate equal to that specified in Title 14, section 1602-C.[3] 10 M.R.S. § 1113(4).

The section 1602-C interest rate applicable in June 2007 is 10.99%.[4] From the due date to the present, the court calculates interest at $5,112.92 plus a 1% per month penalty on the payment that was wrongfully withheld[5] ($5,282.80).

---

[2] Payment is due twenty (20) days after delivery of the invoice, 10 M.R.S. § 1113(3), however, the court is not aware of the date that the defendants received the invoices. The court uses the time frames of M.R. Civ. P. 6(c) to add an additional three days to tallow for delivery of mail. In plaintiff's post-trial proposed findings, counsel urges the court "for simplicity's sake" to accept June 21, 2007, as the payment due date for all three unpaid invoices. Using Rule 6(c), the court fixes June 24, 2007, as the payment due date.

[3] Section 1602-C is the statute commonly used for the award of post-judgment interest. Because the contract here does not specify an interest rate, 14 M.R.S. § 1602-C(1)(A), the court uses a formula of the United States Treasury bill rate plus 6%. 14 M.R.S. § 1602(C)(1)(B). This is commonly calculated and measured form the date of judgment; however, the statute for delayed payments, 10 M.R.S. § 1113(4) allows the assessment of interest from twenty-one days after the obligation becomes due.

[4] This annual interest rate calculates to 0.0003019 per diem.

[5] $232.67 per month.

7

Because the plaintiff is the prevailing party, he is entitled to an award of counsel fees as well, 10 M.R.S. § 1118(4); however, they are not to be considered for purposes of calculating a penalty under section 1113(4).

## IV. JUDGMENT

The clerk will make the following entry as the Decision and Judgment of the court:

A.  Judgment for plaintiff on Count I of the complaint in the amount of $23,261.67.

B.  1. Judgment for plaintiff on Count II of the complaint for $10,395.72,[6] plus attorney fees.

    2. If plaintiff seeks attorney fees, counsel shall submit a statement of services supported by affidavit and the defendant may respond within the time periods allowed for a bill of costs under 14 M.R.S. § 1502-D.

C.  Judgment for plaintiff on defendant's counterclaim.

D.  Plaintiff is awarded post-judgment interest at 6.40%,[7] and costs as allowed by statute and rule.

SO ORDERED.

DATED:  June 24, 2009

Thomas E. Delahanty II
Justice, Superior Court

---

[6] This sum represents $5,112.92 as interest pursuant to 10 M.R.S. § 1113(4) and $582.80 penalties under 10 M.R.S. § 1118(2).

[7] This is the current rate for 2009. It is applicable to the full judgment of $33,657.39, because statutory interest and penalties are part of the remedy for wrongfully withholding payments due.

JOHN HOUGHTON VS KENNETH E KOENKE ET AL
UTN:AOCSsr  -2007-0095355                    CASE #:PORSC-RE-2007-00226
------------------------------------------------------------------------
SEL VD                              REPRESENTATION TYPE      DATE
01 0000000558 ATTORNEY:DOUGLAS, MARTICA
ADDR:103 EXCHANGE ST PO BOX 7108 PORTLAND ME 04112
     F FOR:JOHN HOUGHTON                       PL          RTND  08/20/2007


02 0000007767 ATTORNEY:WHITTEMORE, JAMES
ADDR:20 FEDERAL STREET PO BOX 694 BRUNSWICK ME 04011
     F FOR:KENNETH E KOENKE                    DEF         RTND  09/05/2007
     F FOR:JUDITH R KOENKE                     DEF         RTND  09/05/2007




          Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.